## MRS. ALICE M. BAILEY v. D. BLOCK ET AL.

### No. 2121.  Decided February 15, 1911.

#### 1.—Execution Sale—Mortgage Foreclosure—Unsatisfied Balance.

Upon a judgment for debt with foreclosure of mortgage the sheriff holding an order of sale can not levy upon other property of defendant to satisfy an anticipated balance of the judgment not discharged by sale of the mortgaged property until such foreclosure sale has taken place. Though the mortgaged property failed to satisfy the judgment, sale of other property previously levied on in anticipation of such failure was void and passed no title. (Pp. 102-106.)

#### 2.—Same—Statutes Construed.

Article 1340, Revised Statutes, authorizes the sheriff to levy on property of defendant generally when the order of sale on foreclosure has failed on sale of the mortgaged property, to satisfy the judgment; but until such contingency has happened gives no authority for such levy under that writ; nor is the writ (order of sale on foreclosure) such execution "against the property of defendant" generally as he is authorized to levy by article 2343, Revised Statutes, until such contingency has happened. The levy prior to such time is not a mere irregularity, but a proceeding unauthorized by the process, and purchasers are charged with notice that it conferred no power to sell. (Pp. 103-105.)

Error to the Court of Civil Appeals, First District, in an appeal from Harris County.

Mrs. Bailey and others sued Block and others for the recovery of land. Plaintiffs appealed from a judgment in favor of defendant and on its affirmance obtained writ of error.

*Geo. H. Breaker, I. P. Hutchison,* and *Spotts & Matthews,* for plaintiffs in error.—The sheriff's levy on and his sale of this property at the same time he sold the property described in the order of sale were void, and passed no title. Rev. Stat., arts. 1340, 2338, 2343, 2345, 2360 to 2367, and 2374; Seligson v. Collins, 64 Texas, 314; Ward v. Billups, 76 Texas, 466; Gunter v. Cobb, 82 Texas, 598; Moore v. Hanscom, 103 S. W., 665; Howard v. North, 5 Texas, 310; Brown v. Christie, 27 Texas, 73; French v. Edwards, 13 Wall., 506, 511, 514-516; Ewing v. Hatfield, 17 Ind., 513; Mayen v. Carter, 87 N. C., 146; State v. Roves, 5 Ired., 297; 2 Freeman on Executions (2d ed.), secs. 280, 287, 300, 349, 340; Snodgrass v. Rutherford, 58 S. W., 1054; Terry v. Cutler, 4 Texas Civ. App., 570; Mitchell v. Ireland, 54 Texas, 301; Cain v. Woodward, 74 Texas, 549; Townes v. Harris, 13 Texas, 507; Young v. Smith, 23 Texas, 600; Borden v. McRae, 46 Texas, 398; 17 Cyc., 1076; Karnes v. Alexander (Mo.), 4 S. W., 418.

*Ross & Wood, Baker, Botts, Parker & Garwood, G. -H. Pendarvis*
and *H. J. Dannenbaum,* for defendants in error.—Under the Revised
Statutes of 1879, an order of sale, issued on a judgment for debt, and
costs, and foreclosing a mortgage lien, or other lien, and containing a
general execution clause, as was authorized for such writs, could be
levied upon other property than that against which the foreclosure
was had, as soon as it came into the hands of the sheriff or constable,
and if the property against which the lien was foreclosed was insufficient
to make the amount of the judgment, it was the duty of the officer to
levy on such other property, if it could be found, as soon as he received
the writ. Pasch. Dig., arts. 1479, 1480, 4674, 4675, 4676, 4677;
Rev. Stat., 1879, arts. 1340, 1343, 1344, 2281, 2286, 2326; White v.
Graves, 15 Texas, 143.

It is conceded that the property was duly advertised, and that
the sale was made on the legal day, and at the proper place. Does a
void levy or no levy at all render a sale subject to collateral attack?
This question should be answered in the negative under the Texas
statutes and decisions. Note to Waters v. Duval, 33 Am. Dec., 693,
698; Coffee v. Silvan, 15 Texas, 354; Riddle v. Bush, 27 Texas, 675;
Ayers v. Duprey, 27 Texas, 593; Patton v. Collier, 90 Texas, 115;
2 Freeman on Execution, 2d ed., sec. 274, p. 864. and authorities
there cited; Blood v. Light, 38 Calif., 654; 99 Am. Dec., 441; Note
to Riley v. Martinelli, 21 L. R. A., 33, pp. 39, 41, 42, 43; Smith v.
Olson, 23 Texas Civ. App., 458; Pierson v. Hammond, 22 Texas, 585;
Smithwick v. Kelly, 79 Texas, 576, and see also arts. 2375 and 2378,
R. S. 1895, and 2316 and 2318, R. S. 1879.

As the proceeds of the sale of the property in question went to the
discharge of a lien against the estate of Paul Bremond, of which
Louise Bremond was the devisee and legatee, neither the said Louise
Bremond, nor the plaintiffs claiming under her, should be permitted to
assert any claim in the property without accounting for the money
used in discharge of the lien.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This is an action of trespass to try title for land in the city of
Houston the decision of which depends on the validity of a sheriff's
sale thereof made in 1886 to A. P. Lufkin under a judgment in his
favor against Mrs. Louise Bremond, independent executrix of the
will of Paul Bremond deceased, to whose estate the land belonged. The
plaintiffs in error, plaintiffs below, claim under deeds from Mrs.
Bremond, who was also the devisee under the will, and the defendants
claim under the prior sheriff's sale. The judgment under which the
sale was made established the debt against Bremond's estate and also
foreclosed a mortgage given to secure it on two pieces of land, other
than that in controversy, in the terms of article 1340, Revised
Statutes. The order of sale, which was in conformity with the judg-
ment, was received by the sheriff November 5, 1886, and he advertised
the mortgaged property for sale on the next sale day and, at the same
time, indorsed on the writ a levy on the property in controversy and
advertised it also for sale as under execution on the next sale day.
When that day arrived, he first sold one piece of the mortgaged

property and offered the other, but received no bid, and then sold the land in controversy to make up a balance of the judgment left unpaid.

It is found by the trial court that the sheriff, before levying on the land in controversy, ascertained that the mortgaged property would be insufficient to satisfy the judgment and for that reason made the levy on other land.

The question, of course, is whether or not the sale of the land in controversy was void, and the decision of it depends on the effect of several statutory provisions. Article 1340 prescribes that the judgment to be rendered on foreclosure of a mortgage "shall be . . . that an order of such sale issue to the sheriff, etc., directing him to sell the same (the mortgaged property) as under execution in satisfaction of the judgment; and if the property can not be found, or if the proceeds of such sale be insufficient to satisfy the judgment, then to make the money, or the balance thereof remaining unpaid, out of any other property of the defendant, as in case of ordinary executions."

Article 2338 prescribes the requisites of executions, the second and third subdivisions being:

"2. If the judgment be for money simply, it (the writ) shall require the officer to satisfy the judgment out of the property of the debtor, subject to execution."

"3. If the judgment commands the sale of particular property for the satisfaction thereof, the writ shall be framed accordingly."

Article 2343, which is the chief reliance of counsel for defendant, is as follows: "When an execution against the property of any person is issued to an officer, he shall proceed without delay to levy the same upon the property of the defendant not exempt from execution, unless otherwise directed by the plaintiff, his agent or attorney."

Much light is thrown upon the meaning and purpose of article 1340 by the history of the development of the law regulating the collection of balances, called "deficiencies," due on mortgage debts after exhaustion of the property given to secure them. Originally the mortgagee could only enforce his mortgage against the property. Later it was established that if he had a bond or obligation for the debt collateral to the mortgage, he might, after application of the proceeds of the mortgaged property, maintain an action at law thereon for any balance unpaid. Afterwards, by statute, rule of court, or otherwise, it became the practice in some jurisdictions for the creditor, after the foreclosure and sale of the property and the return thereof showing the result, to apply to the court which decreed the foreclosure for a deficiency judgment; and, in other jurisdictions for the judgment of foreclosure to provide for a report of the sale, the application of the proceeds, and the issuance of execution for any balance ascertained in that way. The last was the procedure in this State (P. D. art. 1480) prior to the revision of 1879, when the further advance shown in article 1340 was made. To all of these practices one prominent requirement is common, and that is that the foreclosure sale is to be made, the proceeds applied and the deficiency thus mathematically ascertained before any proceeding against the property of the debtor other than that mortgaged is allowed. This is true whether the fact is to be ascertained by the Court as the basis of a deficiency judgment,

or by the clerk or referee as the basis of a deficiency execution authorized by the decree of foreclosure. Jones on Mortgages, 6th ed., secs. 1709a, et seq., 1920; Freer v. Tupper, 21 S. C., 81; McCall v. Rogers, 77 Ala., 349; Freeman on Execution, section 10; 27 Cyc., 1746, 1751-2, 1754, 1756, 1760-1.

Neither the court nor the clerk is allowed by such statutes to estimate in advance the proceeds that will probably result from a sale and award judgment or execution for a probable balance. Is such a power given to the sheriff by our statute? It as plainly denies it to him as other statutes referred to deny it to the court or the clerk. The law is so stated in the opinions in Seligson v. Collins, 64 Texas, 314, and Ward v. Billups, 76 Texas, 466. The point may have been involved, in the former case, only incidentally and, in the latter, not at all; but we are satisfied that the statements made of the law are correct. To the same effect are the decisions in Thomas v. Simmons, 103 Ind., 543, and Mitchell v. Ringle, 151 Ind., 16, based upon a statute like ours.

The judgment provided for in article 1340 is contingent as to the deficiency to be enforced against the general estate of the debtor until it is made certain in the way prescribed, viz: by sale of the mortgaged property and application of the proceeds; and this is true also of the writ. Freeman on Executions, sec. 10. The officer has neither judgment nor writ to empower him to proceed against other property than that mortgaged until the prescribed contingency has happened, viz: the sale and the application of the proceeds, rendering certain the amount to be collected as under excution. The writ issued on such a judgment by force of article 1340 may operate as both an order of sale and an ordinary execution, but not necessarily so, since the latter office may be prevented from ever coming into effect by the satisfaction of the judgment from the sale or otherwise; and where it does so operate, its two functions are active successively and not concurrently. This is made plain by the language of the statute and results from the fact that the deficiency to be collected as under execution is uncertain until the sale has taken place. It is only *"then,"* and *"if"* the proceeds be insufficient, that the proceeding as under execution is authorized. It irresistibly follows that the function of the writ as a general execution first comes into existence after the sale and that it is in legal effect the same as the execution formerly required to be issued after the sale and return of the order of sale had taken place. The change in the law merely makes it the duty of the sheriff, instead of the clerk to ascertain the deficiency after the sale, and empowers him then to proceed under the same writ instead of a new one.

There is nothing in article 2343 that affects the question. It applies to executions "against the property" of the defendant, to be enforced "against property not exempt from execution," which plainly are those mentioned in subdivision 2 of article 2338, for "money simply" to be satisfied "out of the property of the debtor subject to execution." The procedure under writs like that here in question is prescribed by subdivision 3 of the last named article to be in accordance with the judgment prescribed by article 1340. It is only where an order of

sale becomes an ordinary execution after sale of the mortgaged property, leaving a balance, that the further procedure as under ordinary execution is to be followed. An order of sale is a kind of execution but it is not the kind referred to in article 2343, or, at least, is not such until a sale of the mortgaged property has been made. We think it clear,. therefore, that never before the day on which the sale was made did the judgment or the writ empower the sheriff to proceed against Bremond's estate as under execution.

And this conclusion necessarily answers the contention that the officer's departure from the prescribed course amounted only to an irregularity which did not render the sale void but only subjected it to direct attack. That contention is founded on the many decisions which hold that purchasers at sheriffs' sales are not affected in collateral proceedings by the officer's failure to take some of the steps required by the statutes preliminary to the making of sales, such as demand upon the defendant to point out property, the making or indorsement of levy, the giving of notice and the like. The very foundation upon which those decisions rest is that at the time of sale the sheriff holds a valid execution based upon a valid judgment under which all the required things could lawfully have been done. Persons bidding may not be in a position to ascertain whether or not the steps preliminary to sale have been taken and are entitled to presume that the officer has done his duty. But all the authorities hold that there must at the least be a valid judgment and execution authorizing the sale which the officer undertakes to make.

If what we have said proves anything it is that the judgment and execution here in question did not empower the sheriff to proceed in any way against the general estate until the mortgaged property had been sold. When that had been done the further power given was not to sell other property at once, but to make the money remaining unpaid out of such other property "as in case of ordinary executions." Until the prescribed contingency had happened the officer had no power to call upon the defendant for, nor to make a levy, nor to give the notices of sale—in short, to do anything required to be done "in case of ordinary executions." His power was the same and no more than it would have been had an execution for the money then for the first time been put in his hands, and we presume it will not be contended that a sheriff has power to sell under an execution on the day of its receipt by him. No presumption could protect the purchaser in such case because the want of power would appear from the face of the writ and of this every one is required to take notice.

The principal arguments urged against the contention that the sale should be held void are based upon inconvenience. One is the danger that in extreme cases, before the sale of the mortgaged property could be made, the debtor might put his other property out of reach. The answer is that the process prescribed for foreclosure sales is not intended to meet unusual emergencies. For extraordinary cases extraordinary remedies are prescribed. It is to be understood that we are not holding that a mortgagee is bound to proceed for a foreclosure Whether he may merely seek and obtain judgment for his debt to be enforced by ordinary execution against the debtor's property indis-

criminately is a question not before us. What we do hold is that when he proceeds under article 1340 and obtains the judgment and order of sale there prescribed, he must proceed in accordance therewith. Neither he, nor the officer, nor the purchaser is at liberty to disregard one of the most fundamental principles concerning the powers of officers, which is that their powers are prescribed and limited in the process under which they act and the law controlling its execution, and these powers can not be enlarged to meet the wishes or necessities of any one. It is true that hardships and losses generally follow mistakes made by officers as to the extent of their powers in such matters, as they often do from other mistakes of law; but it is in the power of purchasers to determine from the face of the process itself whether or not it authorizes that which is being done. Inconveniences of this kind are small when compared with those which would result from a loose construction of the processes prescribed by law under which sheriffs are to act.

We hold that the sale was void and that, upon the facts found, the plaintiffs were entitled to recover, but, as an adjustment of equities may be proper, we will remand the cause in accordance with the established practice. Smithwick v. Kelly, 79 Texas, 564; Wilkin v. Owen, 102 Texas, 197.

*Reversed and remanded.*