LUCKY HOMES, INC., et al., Appellants,

v.

TARRANT SAVINGS ASSOCIATION, Appellee.

No. 16523.

Court of Civil Appeals of Texas.
Fort Worth.
May 8, 1964.

Rehearing Denied June 5, 1964.

McDonald, Sanders, Nichols, Wynn & Ginsburg, and Atwood McDonald, Fort Worth, for appellants.

Brown, Herman, Scott & Young, and A. J. Bryan, Fort Worth, for appellee.

MASSEY, Chief Justice.

In connection with the trial of this case we have reached the conclusion that there was error on the part of the trial court in failing and refusing to submit issues of fact to the jury to be resolved as prerequisites to the plaintiff's right to the judgment it obtained, because the right of the plaintiff to recover on its suit for debt deficiency (following foreclosure and sale of property on which a mortgage had been given as security) could not be said to have been established as a matter of law.

In Casa Monte Company v. Ward, 1961 (Tex.Civ.App., Austin), 342 S.W.2d 812, it is stated, "A prerequisite to the recovery of a deficiency judgment is the establishment of the deficiency by a valid foreclosure sale. Bailey v. Block, 104 Tex. 101, 134 S.W. 323, Sullivan v. Hardin, Tex. Civ.App., Amarillo, 102 S.W.2d 1110."

This statement of law is correct, and, to us, means that he who seeks to obtain a judgment for any deficiency claimed to remain upon a debt owing him (after he has

388

obtained funds to be credited upon the debt as the result of a sale under foreclosure of property pledged as security upon the debt) is obliged to make out a prima facie case that the foreclosure sale was valid; which prima facie case, unrebutted, establishes the propriety of his suit for deficiency and the proper amount thereof. To us it has the further meaning, however, that if plaintiff's prima facie case is rebutted by evidence upon the trial, and an issue raised upon the matter of the validity of the foreclosure sale (under defensive pleading of the defendant wherein fact or facts are asserted inconsistent with that essential element of the plaintiff's cause of action for the deficiency), it becomes the plaintiff's burden to have submitted to the jury and a favorable finding returned on the issue submitting the rebutting fact, because the rebutting fact constitutes a denial of an element of the plaintiff's cause of action. See Hodges on Special Issue Submission in Texas, p. 90, "Burden of Proof", § 32, "Burden in Inferential-Rebuttal Issues".

In Black v. Burd, 1953 (Tex.Civ.App., Fort Worth), 255 S.W.2d 553, writ ref., n. r. e., Justice Renfro of this Court cited the case of John Hancock Mut. Iife Ins. Co. v. Howard, 1935 (Tex.Civ.App., Waco), 85 S.W.2d 986, 989, error refused, and remarked, "The above case discusses the rule that where a mortgagee makes an unauthorized sale, he is liable in damages for the value of the land at the time of the sale, less the value of the mortgage debt, and acknowledges the correctness of the rule where title has, by means of illegal sale, passed into the hands of a third party, and particularly if the third party purchased in good faith for value received and without notice (citing cases)." On page 557 of the opinion is further stated, "Where the record shows, as it does here, that the appellant under the pretense of a sale under the power given in the deeds of trust, in satisfaction of the debt has acquired possession of the mortgaged property and appropriated it to his own use and benefit, it would be inequitable to allow him the full amount of his debt without allowing a proper credit for the value of the property so appropriated."

In this state we use a deed of trust in the nature of a mortgage in transfers of real property. Thereby a lien is retained or given as security, with simultaneous execution of a deed of trust to one who is to hold the office of trustee for the purpose of foreclosure without necessity of resort to litigation. The deed of trust transaction is a conveyance in trust by way of security, subject to a condition of defeasance, or redeemable at any time before the sale of the property. In other words it is a conveyance in trust for the purpose of securing a debt, subject to a condition of defeasance. In connection with any actual execution of the power of sale the person who has given the deed of trust is a *cestui que trust* of him who acts as trustee thereunder, and the trustee in effecting the sale pursuant to the authority granted in the deed of trust owes to him at least the duty to carry out the authority devolved, in scrupulous honesty, according to law and the provisions of the trust instrument. See Bogert, Trusts & Trustees, p. 226, 227, "Trusts and Other Relationships—Distinctions", § 29, "Mortgages and trust deeds"; p. 604, "Sales by Trustees", § 747, "Effect of Wrongful Sale".

In the instant case the defendants/appellants, Lucky Homes, Inc., et al., owed a debt to plaintiff/appellee, Tarrant Savings Association. Said plaintiff was secured as to the indebtedness by a lien on certain realty and the defendants had given further security in that they were obligated under a deed of trust naming O. W. White as trustee. This instrument provided, in the event of any breach of the covenants and agreements therein, that "on the request of the holder of said note (which request is hereby assumed) said Trustee, or his substitute appointed hereunder, is hereby authorized and empowered to sell as an entirety or in parcels * * * the property hereby conveyed to the highest bidder for cash at the Courthouse door in Fort Worth, Tarrant Coun-

ty, Texas on the day and between the hours prescribed by law, after posting notices of sale for the length of time, in the manner and at the places now provided by law for sale of property under powers contained in deeds of trust, * * *." Further language of the instrument provided: "It is agreed that the holder of the note hereby secured may at any time or times appoint a successor or substitute trustee in the place of said Trustee * * * by an instrument in writing, and any person so appointed shall have all powers conferred herein upon the Trustee above named, it being understood that said power of substitution may be exercised as frequently and at such times as said holder of said note may desire."

Further language of the instrument provided: "And Grantors do hereby ratify and confirm any and all acts which the said Trustee or his successor or substitute, may do in the premises by virtue hereof, and expressly stipulate and agree that any and all recitals contained in any deed or deeds executed by the Trustee or substitute trustee under this instrument, shall be conclusively presumed to be true in all courts of law and equity and shall be prima facie proof that all prerequisites to such sale or sales have been regularly performed, and prima facie proof of the regularity of the appointment of said Trustee and of the authority of said Trustee to make said sale, * * *."

In the trial court the plaintiff made out its prima facie case under its suit for deficiency. In connection with its proof of the propriety and regularity of the foreclosure sale it introduced proof that O. W. White, Trustee named in the instrument, became physically unable to act as such and so certified to the plaintiff, as the owner and holder of the note, and that plaintiff did properly appoint Edwin B. Conley as Substitute Trustee by instrument in writing under date of November 30, 1962. Then plaintiff introduced the Deed of Trust and also the deed of the Substitute Trustee to the purchaser at the trustee's sale. In the latter instrument was recited by Edwin B. Conley, Substitute Trustee: "AND, WHEREAS, Pursuant to said request and to the provisions of said Deed of Trust, I proceeded to sell said property at public auction, at the Court House door, of Tarrant County, Texas, between the hours of ten o'clock A.M. and four o'clock P.M., on Tuesday the 4th day of December A.D. 1962, after having given public notice of the time, place and terms of such sale, as prescribed by the terms of said Deed of Trust, and after first posting written notice thereof for three consecutive weeks prior to the day of sale in three public places in said County, one of which was posted at the Court House door of said County; * * *." The Substitute Trustee's deed was executed according to the formalities requisite for transfers of real estate on December 4, 1962.

It is to be noted that there was only a four (4) day's time interval between the day of the appointment of the Substitute Trustee and the day of the Substitute Trustee's sale. The deed executed pursuant to said sale contains the recitation that said Substitute Trustee had given "public notice of the time, place and terms of the sale", and that he, the Substitute Trustee, had posted notices thereof "for three consecutive weeks prior to the day of the sale", etc. From the language we have quoted from the Deed of Trust instrument it is to be observed that the defendants were bound to the agreement that said recitals in themselves should constitute prima facie proof (as against them) that the prerequisites of the sale had been regularly performed, etc.

The evidence, under and within the defensive pleading of defendants, controverted the recitals of the Substitute Trustee's deed, and thus raised the issue of the propriety and regularity of his sale. This evidence came from the lips of the Substitute Trustee himself. He testified that he had not posted any written notice of the sale at all, nor did he give any public notice of the time, place and terms of the sale. We have little doubt but that plaintiff could have marshalled evidence to show that the original Trustee, O. W. White, had attended the posting of the necessary notices, given

public notice of the time, place and terms of the sale, etc., thus satisfying the requisites of law and of the trust instrument itself. But such fact was not established by the evidence in the case. Even had such proof been introduced we believe that the issue arisen upon the regularity of the sale would have persisted and been a question of fact to be resolved by the jury. As heretofore noted, the trial court did not submit the issues so raised to the jury, but believing them resolved as a matter of law, rendered judgment for the plaintiff.

■ The defendants have also presented the contention that an issue was raised upon the matter of whether the Substitute Trustee conducted the sale with scrupulous attention to the fiduciary obligation owed them in connection therewith. They did not submit a request for the submission of such an issue, and we do not believe that such would be an inferential-rebuttal issue upon which the plaintiff would carry the burden as an essential element of its case. Reversible error could not have resulted.

■ Some comment appears in order in connection with the plaintiff's/appellee's counterpoints. In this case it was not incumbent upon the defendants to offer to "do equity" as a prerequisite to obtaining equitable relief, or to tender the balance plaintiff claims to be owing on the debt. Under their pleadings, and under the evidence in the record, the issue existed whether they had already "done equity" in that plaintiff had received more than the balance in question whereby defendants were relieved of any obligation to make further tender. Under defendants'/appellants' theory of the case the question of the validity of the sale by the Substitute Trustee was not a matter of collateral attack in the sense of a choice of attempting to set the sale aside and regain title to realty or to adjudicate title to realty, rather than to conduct litigation which might cast a cloud on the title thereto in another or others who now purport to be owners. Title to the realty was not the issue in the suit, but rather was the issue related to the matter of unjust enrichment of the plaintiff or to the kindred matter of unjust impoverishment of the defendants. In other words the defendants desire proper credit upon the conceded amount of their debt, which, under law they cite as applicable because of the alleged invalidity of the sale, would be the fair cash market value of the property as of the date the Substitute Trustee conducted the sale.

To emphasize the basis of our holding in this case we think it should be understood that the judgment for plaintiff was erroneous because it did not secure the submission of special issues, upon which findings favorable to it were returned, and therefore did not establish those elements of its case prerequisite to the propriety of judgment being rendered in its favor. Issues of fact were raised, the burden of persuasion upon which was the plaintiff's. The case was erroneously withdrawn from the jury. Plaintiff was not entitled to judgment as a matter of law.

Reversed and remanded.